IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 2, 2010 Session

## EVELYN NYE v. BAYER CROPSCIENCE, INC. ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Hamilton County**
**No. 06C760      W. Neil Thomas, III, Judge**

---

**No. E2008-01596-SC-R11-CV - Filed June 7, 2011**

---

JANICE M. HOLDER, J., concurring in part and dissenting in part.

I concur in the majority's conclusion that the learned intermediary doctrine is not applicable to the facts of this case. I disagree, however, that Pittsburgh Corning Corporation ("Pittsburgh Corning") and Owens Corning Corporation ("Owens Corning") were unavailable for service of process and that North Brothers, Inc. ("North Brothers") therefore is subject to suit in strict liability pursuant to Tennessee Code Annotated section 29-28-106 (2000).

In September 2005, Hugh Todd Nye was diagnosed with mesothelioma, a disease that results from exposure to asbestos. On May 15, 2006, Mr. Nye and his wife, Evelyn Nye, ("the Nyes") filed a complaint alleging that North Brothers was liable for injuries to Mr. Nye. North Brothers sold, but did not manufacture, the asbestos products to which Mr. Nye was exposed. The Nyes alleged that North Brothers was strictly liable for Mr. Nye's injury. Tennessee Code Annotated section 29-28-106(b) permits a seller to be held strictly liable for a defective product manufactured by another if the manufacturer of that product is not "subject to service of process . . . or has been judicially declared insolvent." The trial court found that all of the defendant manufacturers of the asbestos products, Johns Manville Corporation ("Johns Manville"), Raybestos-Manhattan, Inc. ("Raybestos"), Owens Corning, and Pittsburgh Corning, were unavailable for service of process and that North Brothers therefore faced potential liability on strict liability grounds.

"The construction of a statute and its application to the facts of a case are questions of law, which we review de novo." Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010). Tennessee Code Annotated section 29-28-106(b) states that no product liability action based on strict liability "shall be *commenced* or maintained against any seller . . . unless the

manufacturer . . . shall not be subject to service of process." (emphasis added). The statute specifically references the commencement of the action. This language requires us to determine the status of the law and facts on the date the action was commenced. Cf. Braswell v. AC and S, Inc., 105 S.W.3d 587, 589-90 (Tenn. Ct. App. 2002) (holding that a claim made pursuant to Tennessee Code Annotated section 29-28-106 accrues and the statute of limitations begins to run when the manufacturer declares bankruptcy). Whether the Nyes' claim against North Brothers can be commenced or maintained pursuant to Tennessee Code Annotated section 29-28-106(b) requires us to determine whether the Nyes could have obtained service of process on the asbestos manufacturers on the date the Nyes commenced their case.

On the date the Nyes filed their complaint, each of the manufacturers had filed for bankruptcy. A petition for bankruptcy automatically stays proceedings against the debtor. 11 U.S.C. § 362(a) (2006). The automatic stay applies to claims[1] determined to arise before the debtor files for bankruptcy ("pre-petition claims"). Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.), 607 F.3d 114, 122 (3d Cir. 2010) (en banc). Claims that arise after the debtor petitions for bankruptcy ("post-petition claims") are not subject to the automatic stay. In particular, the automatic stay prevents service of process on a debtor in bankruptcy. 11 U.S.C. § 362(a)(1).[2]

The bankruptcy court has exclusive jurisdiction to determine the nature of the claims and the extent of the automatic stay. Cf. Cathey v. Johns-Manville Sales Corp., 711 F.2d 60, 62 (6th Cir. 1983) (holding that the bankruptcy court has exclusive authority to grant relief from a stay). Determination of whether the claims against the manufacturers were pre- or post-petition, therefore, requires us to apply the test the presiding bankruptcy court would have applied at the time the Nyes filed their complaint against North Brothers.

The bankruptcy cases of Owens Corning and Pittsburgh Corning were both filed in the Third Circuit. In re Owens Corning, 419 F.3d 195, 201-02 (3d Cir. 2005); In re Pittsburgh Corning Corp., 417 B.R. 289, 295 (Bankr. W.D. Pa. 2006). On the date the Nyes filed their complaint against North Brothers, the Third Circuit followed the now-abandoned

---

[1] A bankruptcy claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (2006).

[2] 11 U.S.C. § 362(a)(1) creates an automatic stay that prevents "the commencement or continuation, including the issuance or employment of process . . . or other action . . . that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

accrual test set forth in <u>Avellino & Bienes v. M. Frenville Co. (In re M. Frenville)</u>, 744 F.2d 332 (3d Cir. 1984) <u>overruled by</u> <u>In re Grossman's</u>, 607 F.3d at 121.

According to the <u>Frenville</u> test, a claim is post-petition if the cause of action accrues according to the law of the forum state after the bankruptcy petition is filed. <u>Frenville</u>, 744 F.2d at 337. At the time the Nyes commenced their action, a bankruptcy court applying the law of the Third Circuit to the Nyes' claims against the manufacturers would look to the law of the state of Tennessee to determine when the Nyes' cause of action accrued. Tennessee law dictates that in "creeping disease" cases, such as asbestos-related injuries, the cause of action accrues with the diagnosis of the disease. <u>See</u> <u>Wyatt v. A-Best Co., Inc.</u>, 910 S.W.2d 851, 856-57 (Tenn. 1995); <u>see also</u> <u>Potts v. Celotex Corp.</u>, 796 S.W.2d 678, 683 (Tenn. 1990) (holding the plaintiff's cause of action for mesothelioma did not accrue until the condition was diagnosed or reasonably could have been diagnosed).

Mr. Nye was diagnosed with mesothelioma in September 2005. The cause of action, and therefore the claim, accrued in 2005. Pittsburgh Corning filed for bankruptcy on April 16, 2000, and Owens Corning filed for bankruptcy on October 5, 2000. <u>In re Pittsburgh Corning</u>, 417 B.R. at 295; <u>In re Owens Corning</u>, 419 F.3d at 201-02. According to the <u>Frenville</u> test in effect at the time the Nyes commenced their action against North Brothers, the Nyes' claims against both Pittsburgh Corning and Owens Corning are post-petition. The automatic stay did not apply because both bankruptcies were filed before the Nyes' claim accrued in September 2005. The Nyes therefore could have obtained service of process on both Owens Corning and Pittsburgh Corning on the date they filed their complaint against North Brothers.

The Third Circuit's opinion in <u>Grossman's</u> overruled <u>Frenville</u> on June 2, 2010. 607 F.3d at 121. The majority asserts that the new test adopted in <u>Grossman's</u> to determine whether a claim is pre- or post-petition must be applied retroactively. <u>See</u> <u>Wright v. Owens Corning</u>, No. 09-1567, 2011WL 1085673, at *10 (W.D. Pa. Mar. 21, 2011) (memorandum opinion).[3] If the <u>Grossman's</u> test is applied, the Nyes' claim would be a pre-petition claim and would be subject to the automatic stay. If the <u>Grossman's</u> test had been applied by a court on May 15, 2006, therefore, Pittsburgh Corning and Owens Corning would not be available for service of process.

---

[3] The majority also asserts that this court should not be obligated to follow the <u>Frenville</u> test because it is "bad law." I recognize that the <u>Frenville</u> test was widely disparaged. Even in the face of harsh criticism, however, courts in the Third Circuit were obligated to follow the <u>Frenville</u> test as established precedent. <u>Jones v. Chemtron Corp.</u>, 212 F.3d 199, 206 (3d Cir. 2000) ("We are cognizant of the criticism the <u>Frenville</u> decision has engendered, but it remains the law of this circuit.") (footnote omitted). Although we may prefer a different test, when we apply the law of the Third Circuit in a bankruptcy matter, we are obligated to follow established Third Circuit precedent.

3

The majority concludes that a change in the substantive law in a foreign jurisdiction should be retroactively applied to a procedural determination made pursuant to Tennessee state law on the date the complaint was filed. As a result, the majority holds that a retroactive application of the Grossman's test today makes Pittsburgh Corning and Owens Corning unavailable for service of process on May 15, 2006.

I disagree that the retroactive application of Grossman's provides the result reached by the majority. On the date the Nyes filed the complaint against North Brothers, the Nyes could have served process on both Pittsburgh Corning and Owens Corning because the Third Circuit followed the now-abandoned Frenville accrual test. Subsequent actions of the Third Circuit Court of Appeals cannot make service of process unavailable retroactively. The determinative issue before us is whether service of process was available against Pittsburgh Corning and Owens Corning at the time the Nyes filed their complaint. The majority conflates this issue with a second issue of whether the lawsuits against those manufacturers would have been dismissed when the Third Circuit Court of Appeals subsequently overruled Frenville. Whether actions commenced against Pittsburgh Corning and Owens Corning would have been viable four years later when the Third Circuit Court of Appeals overruled Frenville is not before us.

Moreover, the case before us differs from both Grossman's and Wright. In those cases, the plaintiffs obtained service of process on the defendants after bankruptcy plans had been confirmed. See In re Grossman's, 607 F.3d at 117; Wright, 2011 WL 1085673, at *1. The issue before the Grossman's and Wright courts was whether the plaintiffs' claims were pre-petition and had been discharged by the confirmation of the defendants' bankruptcy plans. See In re Grossman's, 607 F.3d at 117; Wright, 2011 WL 1085673, at *1. The Grossman's and Wright courts did not retroactively invalidate service of process. Instead, those courts ruled that the claims on which the lawsuits were based were subject to discharge by the bankruptcy confirmation. In re Grossman's, 607 F.3d at 127; Wright, 2011 WL 1085673, at *13.[4]

In contrast, the Nyes never attempted to serve process to commence lawsuits against Pittsburgh Corning and Owens Corning although service of process could have been obtained as to these manufacturers. Tennessee Code Annotated section 29-28-106(b) provides that an action may be commenced against a non-manufacturing seller on strict liability grounds when the manufacturer is not amenable to service of process. Having failed to serve these

_____

[4] The Wright court ruled that the plaintiff's claims were discharged and granted the defendant's summary judgment motion. 2011 WL 1085673, at *13. The Grossman's court ruled that the claims were subject to discharge, but remanded the case to determine if discharge of the bankruptcy claims violated due process. 607 F.3d at 127-28.

4

manufacturers, the Nyes now seek a ruling that service of process that had never been attempted would have been invalid at the time the action was commenced.

I would hold that service of process could have been obtained against both Pittsburgh Corning and Owens Corning on May 15, 2006. I agree with the majority, however, that service of process was not available against both Johns Mansville and Raybestos by virtue of the effect of the channeling injunctions included in the confirmation of their bankruptcy plans.[5]

The trial court erred when it found that Pittsburgh Corning and Owens Corning were not amenable to service of process. The trial court permitted the liability of North Brothers, a seller, to be determined by the jury pursuant to Tennessee Code Annotated section 29-28-106(b). In addition, the trial court specifically declined to rule on the issue of whether the manufacturers were insolvent, and the record does not contain sufficient evidence for us to make this determination as to Owens Corning and Pittsburgh Corning. This Court has previously remanded a case to the trial court to make a determination of whether the manufacturer was insolvent for the purposes of Tennessee Code Annotated section 29-28-106. Baker v. Promark Prods. W., Inc., 692 S.W.2d 844, 849 (Tenn. 1985). I would remand this case to the trial court for a determination as to the solvency of Pittsburgh Corning and Owens Corning.

I am authorized to state that Justice Koch concurs in this opinion.

                                              _____

                                              JANICE M. HOLDER, JUSTICE

---

[5] The legislative intent of Tennessee Code Annotated section 29-28-106 was to provide a remedy for an injured plaintiff "against whomever was most likely to compensate plaintiff for his or her injuries." Braswell, 105 S.W.3d at 589. The last legislative action on section 29-28-106 occurred in 1983, nearly a decade before this Court adopted comparative fault in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992). Tennessee Code Annotated section 29-28-106 was enacted when joint and several liability among all manufacturers applied, and the statute refers to "a manufacturer." This Court has never addressed the issue of the interrelationship between comparative fault and Tennessee Code Annotated section 29-28-106.